UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD ASH,

                Plaintiff,

                                    CASE NO. 12-15201
v.                              HONORABLE GEORGE CARAM STEEH

WALGREENS SPECIALTY
PHARMACY, LLC, and
WALGREENS CO.,

                Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      This disability discrimination case arises out of plaintiff Gerald Ash's claims that his

employer, Walgreens Specialty Pharmacy, LLC and Walgreens Co. (collectively

"Walgreens") terminated him in retaliation for using medical leave for treatment of his HIV

in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Ash also claims

Walgreens denied his leave request to attend a doctor appointment in violation of the

FMLA, and failed to accommodate his disability under the ADA.  Now before the court is

Walgreen's motion for summary judgment.  Oral argument was heard on January 13, 2014.

For the reasons set forth below, Walgreen's motion shall be granted as to Ash's FMLA

interference claim arising out of his request to attend a doctor's appointment, and his failure

to accommodate claim under the ADA, but denied as to his FMLA and ADA claims arising

out of his termination.

## I. Factual Background

On February 18, 2008, Walgreens hired Ash to work as a "team lead" at its Ann Arbor specialty pharmacy, also known as a "call center". The Ann Arbor call center fills prescription orders by mail for specialty drugs used in the treatment of cancer, HIV, hepatitis, and other illnesses, which are not usually available at retail stores. On September 29, 2009, Walgreens promoted Ash to a supervisor position. In April, 2010, Ash was promoted again, this time to the patient manager supervisor position. Call center general manager, Judie Kral, interviewed Ash for the position, hired him, and became his direct supervisor. In that position, Ash supervised 72 employees and his duties included managing groups responsible for customer service, pharmaceutical order processing, and insurance support. At his deposition, Ash testified that he lacked knowledge of the insurance business which he needed to learn to perform his new job. (Doc. 19, Ex. C at 86). Walgreens alleges that Ash failed to learn the technicalities of the insurance business, and thus, failed to perform his job to satisfaction.

According to Walgreens, Kral began receiving complaints about Ash's work in the fall of 2011, but she decided to give him more time to acclimate to the new job, and thus did not issue a performance improvement process ("PIP") until February, 2012. (Doc. 19, Ex. E at 124-35). In November, 2011, however, human resources manager, Jessica Gliesman, issued an employee document called a "Stop, Stop, Continue" ("SSC") process which outlines areas where improvement is needed and recognizes areas where an employee is succeeding. (Doc. 19, Ex. F). Gliesman testified at her deposition that the SSC is not a form of discipline (Doc. 23, Ex. 19 at 100); however, the document issued in

-2-

connection with the SSC outlines certain employee complaints against Ash, including poor communication and overdelegating.  (Doc. 19, Ex. F).

Walgreens gave Ash a bonus and a pay increase in December, 2011.  Pay raises and bonuses at Walgreens are generally merit based.  (Doc. 23, Ex. 17 at 67-68). Walgreens alleges, however, that Ash's bonus and increase in 2011 were not based on his performance, but that Kral authorized pay increases for all supervisors across the board without conducting any employee evaluations. (Doc. 26, Ex. 4 at 106).

Ash testified that in November, 2011, Kral told him that she had let some nurses go because of "medical issues."  (Doc. 23, Ex. 1 at 192).  At her deposition, Kral admitted that one of the nurses that she terminated was on FMLA leave.  (Doc. 23, Ex. 5 at 227). Sometime in early 2012, Ash and four other employees filed a written complaint against Kral alleging that she created a hostile environment based on her abrasive management style.  (Doc. 23, Ex. 1 at 134-35).  Walgreens investigated the complaint, issued a written warning, suspended her for two days, and placed her on a PIP in March, 2012.[1]  (Doc. 23, Ex. 5 at 183-84).

In January or February, 2012, Ash told Gliesman that he suffered from HIV and complained that the stress of working for Kral exacerbated his condition.  (Doc. 23, Ex. 1 at 37).  Before he disclosed his HIV status, Ash alleges that Kral stated on two occasions, "God forbid you ever have someone on a management team that takes FMLA; you might as well just get rid of them because they are useless."  (Doc. 23, Ex. 1 at 192).  On February 2, 2012, Ash asked Kral for leave to attend a medical appointment.  (Doc. 23, Ex.

---

[1]On October 8, 2013, Kral separated from her employment with Walgreens. According to Ash, Walgreens terminated her.

11).  Kral denied his request.  Id.  One week later, on February 9, 2012, Kral issued Ash a PIP.  (Doc. 23, Ex. 15).  The document issued in connection with the PIP references verbal reprimands in September, October, and November, 2011.  Id.  Fearing that Kral would not authorize his leave requests for medical appointments, on March 26, 2012, Ash filed a request for intermittent FMLA leave.  (Doc. 23, Ex. 2, 3).  On those forms, he identified his medical condition as HIV.  Id.  In speaking with Gliesman about his leave request, she told him that Kral would be required to sign off on the request.  At his deposition, Ash testified that he believed that Gliesman would inform Kral of his HIV status, but when pressed, admitted that she did not specifically state that she would tell Kral that he had HIV.  (Doc. 23, Ex. 1 at 42-43).  On the form that Gliesman presented to Kral, the reason for his leave request is identified as "serious chronic condition."  (Doc. 23, Ex. 3).  Kral testified that the first time she learned that Ash has HIV was at her deposition, but admitted knowing that he had a serious chronic condition. (Doc. 19, Ex. A at 148-49).

Although Ash requested intermittent FMLA leave, he never actually used any of it. On Monday, April 16, 2012, he requested leave for a medical appointment set for Friday, April 21, 2012.  (Doc. 23, Ex. 12). In a written e-mail, Kral advised Ash that there was an important meeting in the morning on the 21st asked him to try to reschedule his appointment for another time.  Id.

On May 23, 2012, Kral presented Ash with a PIP and a final written warning advising him that he had 60-days to improve his performance or he risked termination.  (Doc. 23, Ex. 16).  In the written record of his discipline, Kral wrote, *inter alia*, that Ash was not meeting the expectations of his position as he lacked business judgment, failed to timely communicate and provide updates to senior management, and did not understand the

insurance side of the business.  Id.  Ash argues the issuance of the final written warning violated Walgreen's progressive discipline policy because he had not received a prior verbal and written warning.  In support of its claim that Ash was fired for cause, Walgreens relies on a four-page performance log, filed under seal, in which Kral recorded Ash's alleged performance failures from September, 2011 until June 26, 2012.

In late June, 2012,  Ash alleges that Kral told him that just because he had a medical condition did not mean he was not expected to perform.  (Doc. 23, Ex. 1 at 177). Walgreens argues that Kral decided to terminate Ash on June 26, 2012, approximately one week before he filed for continuous FMLA leave on July 9, 2012.   In support of this contention, Walgreens relies on four pieces of evidence: 1) Kral's deposition testimony that she decided to terminate him in late June, 2012 but put off telling him because of her scheduled vacation (Doc. 19, Ex. A at 241), 2) an e-mail from vice president of specialty operations and pharmacy operations Donald Vidic to Gliesman dated September 19, 2012 stating that they would go forward with the June 26, 2012 decision to terminate Ash (Doc. 19, Ex. O), 3) Gliesman's testimony that the decision to terminate Ash was made in late June (Doc. 19, Ex. E at 209), and 4) Ash's own deposition testimony that on June 26 or 27, 2012, he was in Human Resource manager Mo Zayed's office and overheard Gliesman state on speaker phone that they were going to terminate him without waiting 60 days. (Doc. 19, Ex. C at 202-03).  Ash responds that the decision to terminate him was made sometime after he filed for continuous leave (so likely in retaliation for his FMLA request). In support of this claim, he relies on notes from Kral's executive coach Woody Woodburn wherein Woodburn states Kral expressed concerns on August 16, 2012, over how Ash will handle changes made in his absence upon his return to work (Doc. 23, Ex. 25), and a June

27, 2012 entry in Kral's performance log of Ash states that Kral "still had hope, supported [Ash] and thought he could do the job."

On July 6, 2012, Ash began his continuous FMLA leave for which he filed his formal request on July 9, 2012.  (Doc. 23, Ex. 4).  Gliesman testified that they decided to allow Ash the disability leave he requested before following through on the decision to terminate him.  (Doc. 19, Ex. E at 210).   Kral was required to sign off on that leave request.  As with the intermittent leave request, the continuous leave request presented to her did not state that HIV was the reason, but stated "serious health condition."  (Doc. 19, Ex. A at 146, Ex. P).  Ash qualified for and was paid short-term disability benefits for the time he was on leave.  On September 21, 2012, Ash returned to work.  On that morning, Ash met with Kral and Gliesman and Kral told Ash that he was being terminated for performance issues that had been discussed earlier in the year.  (Doc. 23, Ex. 1 at 184).

On February 15, 2013, Ash filed a three-count amended complaint against Walgreens alleging (1) retaliation in violation of the FMLA, (2) interference in violation of the FMLA, and (3) violations of the ADA under theories of disparate treatment, failure to accommodate, and retaliation.  Walgreens seeks summary judgment on all three counts.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient

administration of justice.  The procedure is not a disfavored procedural shortcut.  <u>Celotex</u> <u>Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>see</u> <u>also</u> <u>Cox v. Kentucky Dept. of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Amway Distributors</u> <u>Benefits Ass'n v. Northfield Ins. Co.</u>, 323 F.3d 386, 390 (6th Cir. 2003) (<u>quoting</u> <u>Anderson</u> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Redding</u>, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>see</u> <u>also</u> <u>National</u> <u>Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>McLean</u> <u>v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  <u>Anderson</u>, 477 U.S. at 248, 252.  Rather, there must be

evidence on which a jury could reasonably find for the non-movant.  <u>McLean</u>, 224 F.3d at 800 (<u>citing</u> <u>Anderson</u>, 477 U.S. at 252).

**III. Analysis**

**A.     FMLA Claims**

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a)(1).  The Sixth Circuit recognizes two distinct theories under the FMLA, (1) the "interference" theory, and (2) the "retaliation" theory.  <u>Seeger v. Cincinnati Bell Telephone Co.</u>, 681 F.3d 274, 282 (6th Cir. 2012).  Under the "interference" theory, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer."  <u>Id.</u> (internal quotations and citations omitted).   Under the retaliation theory, on the other hand, the intent of the employer is relevant and the inquiry is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason."   <u>Id.</u> (citations omitted). Ash seeks to recover under both theories, and Walgreens seeks summary judgment as to both.

**1.  Retaliation in violation of the FMLA**

Under the retaliation theory, the plaintiff must prove that the defendant discriminated against him because he took FMLA leave.  <u>Arban v. West Publ'g Corp.</u>, 345 F.3d 390, 403 (6th Cir. 2003).   Retaliation claims under the FMLA can be established by direct or circumstantial evidence. <u>Gibson v. City of Louisville</u>, 336 F.3d 511, 513-14 (6th Cir. 2003). "[D]irect evidence is evidence which, if believed, requires the conclusion that unlawful

-8-

discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). Although direct evidence cannot be based upon isolated remarks, such remarks are relevant if made by a decision-maker. DiCarlo v. Potter, 358 F.3d 408, 416 (6th Cir. 2004). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." Jacklyn, 176 F.3d at 926.

In this case, although Ash relies on discriminatory statements he claims are attributable of Kral, which may be characterized as direct evidence of discrimination, it appears he is relying on the McDonnell-Douglas burden shifting framework reserved for discrimination cases based on circumstantial evidence.  Thus, the court analyzes the retaliation claim under that framework, and considers the direct evidence presented when deciding whether Ash has proven pretext.  Retaliation claims based upon indirect evidence are evaluated under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  To establish a *prima facie* case, Ash must show (1) he engaged in a protected activity under the FMLA; (2) the employer knew he had exercised his FMLA rights; (3) the employer took an adverse employment action against the employee; and (4) a causal connection exists between the exercise of the FMLA right and the adverse employment action.  Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012). Once the plaintiff establishes his *prima facie* case, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions.  Id.  Once the defendant has articulated a nondiscriminatory reason for its decision, the presumption of discrimination that arises from the plaintiff's *prima facie* case disappears and the plaintiff must show that

-9-

the defendant's proffered explanation is merely a pretext for discrimination. Id. at 762. In this case, the first three factors of Ash's *prima facie* case are easily met. The only question is whether Ash has demonstrated a question of fact as to the causation factor.

### a. Causation

In this case, Ash argues that he establishes causation because he was terminated the day he returned from work. The Sixth Circuit has held that the minimal causal connection required to establish the *prima facie* case may, in a narrow group of cases, be made based solely on the close proximity between a plaintiff's FMLA leave and termination. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008); Bell v. Prefix, Inc., 321 Fed. App'x 423. 426 (6th Cir. 2009). In this case, Walgreens argues that Ash cannot establish temporal proximity because the decision to terminate him occurred in June, 2012, before he made his FMLA continuous leave request. The evidence as to this point conflicts. Walgreens has submitted an e-mail from Vladic stating the decision was made on June 26, 2012, as well as the deposition testimony of Kral and Gliesman that the decision was made in late June, 2012. Even Ash's own deposition supports the conclusion that the decision to terminate him was made in June as he testified there that he overheard Gliesman telling Zayed on the speaker phone on June 26, 2012, that he would be terminated before his 60 days ran from the giving of his final written warning. In opposition to Walgreen's motion for summary judgment, however, Ash argues that the decision occurred sometime while he was on medical leave based on (1) the June 27, 2012 performance log entry by Kral on that date which states that she supported Ash and hoped he could improve his performance to meet expectations, and (2) Woodburn's August 16,

-10-

2012 notes that Kral expressed concern as to how Ash would respond to changes within the department upon his return to work.  Based on this conflicting evidence, a question of fact exists as to whether Walgreens decided to terminate Ash in late June, 2012, as alleged, or whether the decision was made at a later point after he had requested leave. Moreover, a close proximity in time exists between Ash's request for intermittent leave made in March, 2012, and Kral's increased scrutiny of his work, and her issuance of the May, 2012 PIP.

In deciding whether Ash has met his *prima facie* case, the court is mindful of the Sixth Circuit's admonition that "plaintiff's burden in establishing a *prima facie* case is not intended to be onerous" and is minimal.  <u>Bryson v. Regis Corp.</u>, 498 F.3d 561, 571 (6th Cir. 2007).  Under this liberal standard, the court will presume that Ash has shown causation sufficient to establish his prima facie case based on the proximity in time between his discharge and his continuous leave, coupled with the discriminatory remarks attributed to Kral.

### b.  Legitimate, Non-Retaliatory Reason

The court now turns to the second step of the <u>McDonnell Douglas</u> three-part test which requires this court to consider whether Walgreens has come forward with a legitimate, nondiscriminatory reason for Ash's termination.  Here, Walgreens alleges that it fired Ash for his performance failures as documented in his February 9, 2012 PIP and the May 23, 2012 final written warning which put Ash on notice he would be terminated if his performance did not improve.  Walgreens has met its burden of production, and the burden now shifts to Ash to prove that Walgreen's true reason for terminating him was retaliation for his taking FMLA leave.

-11-

### c. Pretext

To prove pretext, Ash must produce evidence to show that Walgreen's proffered reason for his discharge was false. Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 316 (6th Cir. 2001). A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. Seeger, 681 F.3d at 285. The Sixth Circuit has held that unlike its role in establishing a *prima facie* case, temporal proximity standing alone is insufficient to establish pretext. Id. at 285 (citing Donald, 667 F.3d at 763). The Sixth Circuit has held, however, that "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." Id. (citations omitted).

Ash argues that he has shown Walgreen's real reason for terminating him was in retaliation for his having taken FMLA leave based upon (1) temporal proximity between his medical leave and termination on the day he returned to work, (2) alleged statements of Kral that just because he had a medical condition, did not mean he was not expected to perform, (3) alleged statements of Kral that Walgreens should get rid of all employees on FMLA as they are all useless, (4) Kral discharged some nurses from the call center based on their "medical issues," at least one of whom was on FMLA leave, (5) Kral allegedly increased her scrutiny of him after he filed a request for intermittent FMLA leave and subjected him to demeaning and humiliating comments, and (6) Ash received a bonus and alleged merit based pay increase in 2011 and Kral did not become critical of his performance until he requested FMLA leave.

Ash argues the facts of this case are comparable to White v. Hurley Med. Ctr., No. 09-CV-14344, 2010 WL 4063202 (E.D. Mich. Oct. 14, 2010), in which this court denied an employer's motion for summary judgment finding issues of fact existed as to whether or not defendant-employer fired plaintiff in retaliation for her taking FMLA leave to care for her sick mother.   In that case, this court found issues of fact on the causation question based on plaintiff's supervisor's sudden change in her treatment of her after she requested leave. Id. at *6.   Prior to her request for leave, plaintiff alleged that she had a favorable relationship with her supervisor, but after her request, her supervisor became hostile, overly critical, and removed some of her responsibilities.  Id. The facts in this case are somewhat analogous.   The evidence presented suggests that Kral's scrutiny of his performance increased first, after he requested leave to attend a medical appointment in February, 2012, and again after he filed for intermittent FMLA leave in March, 2012.   But unlike the facts presented in White, it appears that Ash's relationship with Kral was strained prior to his request for medical leave, as indicated by the complaint that he filed with four other employees against her in early 2012.   Despite this dissimilarity, Ash has come forward with sufficient other evidence to overcome Walgreen's proffered reason for his discharge to survive summary judgment on his retaliation claim under the FMLA.

Specifically, while there is a factual dispute as to whether his 2011 bonus and pay increase reflected the judgment of his employer that he was doing a good job, the fact remains that he did receive a bonus and pay increase in December, 2011 which tends to support his claim that Kral began to scrutinize and criticize his performance only after he filed for medical leave.  Ash also has introduced evidence that Kral made disparaging remarks about employees who take medical leave and told him that she terminated certain

nurses based in part on their "medical issues." This direct evidence, which the jury may or may not believe, supports Ash's claim that Kral harbored discriminatory animus towards those taking medical leave. Walgreens rebuts Ash's proofs with Gliesman's deposition testimony that at any given time twenty percent of the call center workforce was on FMLA leave, and that she never heard Kral say anything negative about workers taking medical leave. (Doc. 19, Ex. E at 181-83). The court cannot make credibility determinations in deciding a motion for summary judgment; however, thus a fact question exists as to whether Kral was motivated by discriminatory animus in terminating Ash.

Walgreens argues that Kral fails to show pretext because Kral, as the decision maker, did not know that Ash had HIV. In order to prevail on a FMLA retaliation claim, however, Ash need not prove that Kral knew the details of his medical condition, only that she discriminated against him because he used FMLA leave. See Arban, 345 F.3d at 403 (citing 29 C.F.R. § 825.220(c)). Viewing the evidence in a light most favorable to Ash, a factual dispute exists as to whether Kral intensified her criticism of Ash's performance because he requested leave and whether or not she terminated him because he used FMLA leave. Thus, Walgreen's motion for summary judgment as to Ash's retaliation claim under the FMLA shall be denied.

### 2. Interference in violation of the FMLA

The Sixth Circuit has held that the McDonnell Douglas tripartite burden shifting test applies to FMLA interference claims as well. Donald, 667 F.3d at 762. To establish a *prima facie* case of an "interference" claim under the FMLA, a plaintiff must demonstrate: (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as defined under the FMLA; (3) he was entitled to leave under the

FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) his employer denied his rights to which he was entitled by the FMLA. Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 577-78 (6th Cir. 2007). Each element must be proved by a preponderance of the evidence. Wysong v. Dow Chemical Co., 503 F.3d 441, 447 (6th Cir. 2007) (citations omitted). In this case, the first four elements are not in dispute and the court limits its analysis to the fifth prong. Ash argues that Walgreens interfered with his FMLA rights by denying his request for leave to attend a doctor's appointment made on April 16, 2012,[2] and by failing to reinstate him when he returned from leave on September 21, 2012. The court considers both alleged adverse employment actions below.

### a. Medical Appointment

Ash requested leave for a medical appointment on April 16, 2013. Kral responded by e-mail stating, "[w]e have our weekly BioScrip Implementation planning meeting on Friday and it's important that all managers attend because we are so close to go-live, can you select another day or modify the request for the afternoon?" (Doc. 23, Ex. 12). Walgreens argues that Kral's request that Ash reschedule his doctor appointment for a more convenient time is the type of employer-employee communication anticipated by the FMLA. Specifically, Walgreens relies on 29 C.F.R. § 825.302(e) which provides that "[w]hen planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the treatment so as not to disrupt unduly the

---

[2]Walgreens also argues Ash may not recover for Kral's denial of his request for leave to attend a medical appointment in February, 2012, as he made his request over a month before he filed for FMLA intermittent leave. From Ash's response, it does not appear that he is seeking to recover on that basis. If he is, the court agrees with Walgreens that the February denial is not actionable under the FMLA.

employer's operations." Id.  In this case, Kral did not outright deny Ash's request for leave for a medical appointment but merely asked him to try rescheduling it for a better time. Under these circumstances, Ash has failed to show that his employer denied him FMLA rights.  Accordingly, summary judgment shall enter for Walgreens on Ash's interference claim arising out of his request for medical leave made on April 16, 2012.

### b. Termination

The court turns now to the question of whether Ash has come forward with sufficient proofs to defeat Walgreen's motion for summary judgment as to his interference claim arising out of his termination.  Walgreens argues that Ash cannot meet his *prima facie* case, or his more substantial pretext requirement, because it decided to terminate Ash before he requested and took continuous leave.  As discussed *supra*, an issue of fact exists as to this contention.  In addition, even accepting as true Walgreen's assertion that it decided to fire Ash in June, 2012, it is undisputed that Ash had requested intermittent FMLA leave approximately three months earlier.  For the same reasons that Ash's retaliation claim arising out of his termination survives Walgreen's motion for summary judgment, his interference claim does so as well.

## B.  ADA Claims

### 1.  Improper Termination or Disparate Treatment

The ADA prohibits discrimination against a qualified individual with a disability.  42 U.S.C. § 12101 *et seq.*  A claim for improper termination or disparate treatment follows the McDonnell Douglas burden shifting analysis.  To establish a *prima facie* case of improper termination or disparate treatment under the ADA, a plaintiff must demonstrate that "(1) he

-16-

is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open." Brenneman v. MedCentral Health Sys., 366 F.3d 412, 417 (6th Cir. 2004). The fifth element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." Hopkins v. Electronic Data Sys., 196 F.3d 655, 660 (6th Cir. 1999) (citations omitted). As with an FMLA retaliation or interference claim, once the plaintiff establishes his *prima facie* case, the burden of production shifts to the employer to come forward with a legitimate non-discriminatory reason for the adverse employment decision. Brenneman, 366 F.3d at 417. Once the employer satisfies its burden, the employee must demonstrate that the proffered reason was, in fact, a pretext for unlawful disability discrimination. Id. The Sixth Circuit has recently explained that to establish pretext, a plaintiff must show that the adverse employment discrimination occurred *because* of a disability. Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2012).

The parties do not dispute that Ash is disabled. Walgreens argues that Ash cannot prove disability discrimination under the ADA because Kral, who decided to terminate him, did not know that he had HIV. See Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1219 (10th Cir. 2007) (fact that employee applies for and receives FMLA leave does not mean that employer regarded employee as disabled). Ash responds that a question of fact exists as to whether or not Kral knew that he had HIV as he disclosed his medical condition on his FMLA paperwork. He also posits that it is possible that Gliesman or Zayed, who admittedly knew of his HIV status, told Kral of his condition. Walgreens is correct that the mere fact that an employee requests FMLA leave does not translate into a finding that an employer

-17-

knows that an employee is disabled within the meaning of the ADA, and in fact, the court can imagine many instances where taking of medical leave would definitely not mean that an employee was disabled.  For example, an employee might take maternity or paternity leave, or might have routine surgery.  In both instances, the employee likely will return to work without being considered to be disabled.  In this case, by contrast, Kral admits that when she approved Ash's request for intermittent leave, the reason listed on the authorization form stated that Ash had a "serious chronic condition"  (Doc. 23, Ex. 3), and when he took continuous leave, the form stated that Ash had a "serious health condition." (Id. at Ex. 4).  The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102 (1)(A).  Based on Kral's admission that she knew Ash had a "serious chronic condition" or a "serious health condition," a reasonable trier of fact could determine that Kral knew that Ash had a disability as defined by the ADA.

Ash also argues that he has established his *prima facie* case of disability discrimination because Kral allegedly treated two other employees with similar performance issues, but who were not disabled, more favorably.  Specifically, Ash points to Paul Cornille and Mark Rodriguez.  Although Kral testified that Cornille had performance deficiencies, she did not subject him to any formal disciplinary action prior to his voluntary resignation. (Doc. 23, Ex. 5 at 75, 100).  Walgreens contends that Cornille was not similarly situated to Ash because Cornille's performance problems related to additional duties involving his role in supervising a second call center which Walgreens later removed.  (Doc. 26, Ex. 2 at 56-62).  As to the second employee Ash claims was similarly situated, Kral testified that Rodriguez was placed on an individual development plan for his failure to build a cohesive

working environment and his lack of understanding of operations.  (Doc. 23, Ex. 5 at 98).

Ash claims these are some of the same issues Kral cited in his performance evaluations.

Kral testified that Rodriguez improved his performance within 60 days.  (Id. at 99).  Ash

complains that Kral denied him the 60 days anticipated for performance improvement

provided for in the final written warning she issued to him on May 23, 2012, and thus,

treated him less favorably for the same alleged performance issues.  Walgreens responds

that Rodriguez was treated similarly as Rodriguez was terminated on November 19, 2013

for poor performance. (Doc. 26, Ex. 1).  Rodriguez was fired approximately one week after

Ash filed his response brief in this case.  Because Rodriguez continued his employment

for over a year after Kral disciplined him, the trier of fact still might accept Ash's complaint

that Rodriguez was treated more favorably than him based on the longer length of time

Walgreens gave him to improve his performance.  Based on this discrepancy, a reasonable

jury might find that Walgreens treated Ash less favorably than Rodriguez based on his

disability.

For the same reasons discussed under this court's analysis of Ash's FMLA

discrimination claims, Walgreens argues that it has established a legitimate reason for his

discharge, namely, his alleged poor performance, which plaintiff has not overcome.  For

the reasons discussed above addressing the FMLA claims, fact issues exist as to whether

or not Ash's termination was the result of discrimination or whether it was a legitimate

business decision.

-19-

### 2.   Failure to Accommodate and Retaliation Claims

At oral argument, Walgreens argued that Ash's failure to accommodate claim and retaliation claims under the ADA should be dismissed as Ash failed to address those claims in his response brief.  When asked if Ash was indeed waiving those claims, Ash's counsel stated that he did not intend to abandon them.  Upon review of Ash's response brief, however, the court agrees that Ash failed to address the reasonable accommodation claim.  Moreover, at his deposition, Ash stated that the only accommodation he sought for his HIV was continuous medical leave and that was, in fact, granted.  (Doc. 19, Ex. C at 196).  While Ash noted he would have liked to have worked from home because of his HIV, he admitted that he never requested that flexibility.  Id. at 196-97.  In order to prevail on a failure to accommodate claim under the ADA, the employee must propose the accommodation to his employer and prove that it is reasonable.  Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 202 (6th Cir. 2010).  Having failed to do so, summary judgment shall enter for Walgreens on Ash's failure to accommodate claim.  His ADA retaliation claim, however, survives summary judgment as Walgreens relied on its analysis of the FMLA retaliation claim to support dismissal of that claim.  Ash's discussion of causation and pretext under the FMLA applies equally to his ADA retaliation claim.  For the same reasons that the FMLA retaliation claim survives, his ADA retaliation claim survives as well.

### IV. Conclusion

For the reasons set forth above, Walgreen's motion for summary judgment (Doc. 19) hereby is GRANTED as to Ash's interference claim under the FMLA with respect to the denial of his request to attend an April, 2012 doctor's appointment, and his failure to

accommodate claim under the ADA, but hereby is DENIED as to the rest of his FMLA and

ADA claims.

**IT IS SO ORDERED**.

Dated:  January 22, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

| CERTIFICATE OF SERVICE |
| --- |
| Copies of this Order were served upon attorneys of record on January 22, 2014, by electronic and/or ordinary mail. |
| s/Marcia Beauchemin<br>Deputy Clerk |

-21-